**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**INDICTMENT FOR CONSPIRACY TO COMMIT WIRE FRAUD, WIRE FRAUD, AND NOTICE OF FORFEITURE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 26-89-JWD-SDJ |
| | : | |
| | : | |
| *versus* | : | |
| | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1343 |
| MICHELLE W. JACKSON, a.k.a. | : | 18 U.S.C. § 981(a)(1)(C) |
| "Michelle Walters Jackson," and | : | 21 U.S.C. § 853(p) |
| RYACHANELLE L. MORRIS | : | 28 U.S.C. § 2461(c) |

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

1. Defendant, **MICHELLE W. JACKSON**, a.k.a. "**Michelle Walters Jackson**," was a resident of Baton Rouge, Louisiana, within the Middle District of Louisiana.

2. Defendant, **RYACHANELLE L. MORRIS,** was a resident of Vacherie, Louisiana, within the Eastern District of Louisiana.

3. Financial Lender 1 was an online financial technology company based in Atlanta, Georgia, that engaged in lending to small businesses. Financial Lender 1 participated in the SBA's Paycheck Protection Program ("PPP") as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

4. Financial Lender 2 was an online financial technology company based in Jersey City, New Jersey, that engaged in lending to small businesses and provided online business banking services. Beginning in Spring of 2021, **MORRIS** maintained an account there in the name of Da Hood Rich Collection, ending in 1681.

USA Sealed Group
USPO
USM

5. Bank 1 was a financial institution domiciled in Baton Rouge, Louisiana. **JACKSON** maintained an account there in the name of MNR Total Services, LLC.

6. Bank 2 was a financial institution domiciled in Vienna, Virginia. **JACKSON** maintained an account there in her name.

**COVID-19 Disaster-Relief Programs**

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March of 2020 and designed to provide emergency financial assistance to millions of Americans who were suffering the economic effects of the COVID-19 pandemic. The CARES Act provided relief to small businesses through the Paycheck Protection Program ("PPP") and the expansion of the Economic Injury Disaster Loan ("EIDL") Program. Other programs, including the Pandemic Unemployment Assistance Program ("PUA"), Federal Pandemic Unemployment Compensation ("FPUC"), and the Lost Wages Assistance Program ("LWAP"), expanded unemployment insurance ("UI") eligibility and increased UI benefits.

*Paycheck Protection Program*

8. The Paycheck Protection Program ("PPP") was administered by the Small Business Administration ("SBA") and provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

9. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan

application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

10. PPP loan applications were electronically submitted or caused to be submitted by the borrower to a third-party SBA-approved lender, like Financial Lender 1. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

11. The proceeds of a PPP loan were to be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrower to purchase consumer goods, automobiles, personal residences, clothing, or jewelry, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

*Economic Injury Disaster Loan Program*

12. The CARES Act expanded an existing disaster-related program, the Economic Injury Disaster Loan ("EIDL") program, to provide loan assistance for small businesses and other eligible entities. EIDL proceeds could be used to pay fixed debts, payroll, accounts payable, and other necessary financial obligations that could not be met as a direct result of the disaster. Eligible applicants could also request and receive immediate advances of up to $10,000, which did not have to be repaid.

13. EIDL funds were issued directly from the United States Treasury, and applicants could apply through the SBA via an online portal and application. The loan application required the applicant to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain funds. The application required the applicant to provide information about the business (such as the number of its employees and its gross revenues for the 12-month period prior to the date of the disaster) and information as to any criminal history of the business owner, among other information. Applicants were required to certify that the information provided in their applications was true and accurate, and applicants were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

*Pandemic Unemployment Benefits*

14. Unemployment Insurance ("UI") was a joint state and federal program that provided monetary benefits to eligible lawful workers. Although state workforce agencies ("SWAs") administered their respective UI programs, they did so in accordance with federal laws and regulations. UI payments (benefits) were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits were paid. Generally, UI weekly benefit amounts were based on a percentage of the applicant's earnings over a base period. As mentioned above, the CARES Act expanded these benefits in response to the COVID-19 pandemic by establishing the PUA, FPUC and LWAP.

15. The SWA for each state had a different title. In the State of California, the California Economic Development Department, based in Sacramento, administered the UI program. In the State of Arizona, the Arizona Department of Economic Security, based in

Phoenix, Arizona, administered the UI program. In the State of Louisiana, the Louisiana Workforce Commission ("LWC"), based in Baton Rouge, Louisiana, administered the UI program.

16. Those seeking UI benefits submitted online applications to the SWAs. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, date of birth, telephone number and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19 related reason for being unemployed, partially employed, or unable to work. The SWAs relied upon the information in the applications to determine UI benefits eligibility. Once an application was approved, the SWA typically distributed state and federal UI benefits electronically to a debit card or via direct deposit. These debit cards were sent via the mail to the address the claimant provided. The claimant could activate their debit card via telephone or online.

**COUNT 1**
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**

17. Beginning in or around April 2020, and continuing until at least November 2021, in the Middle District of Louisiana and elsewhere, the defendants, **MICHELLE W. JACKSON**, a.k.a. "**Michelle Walters Jackson**," and **RYACHANELLE L. MORRIS**, did knowingly and willfully conspire and agree with each other, and with others known and unknown to the grand jury, to commit wire fraud, that is, to devise a scheme to defraud the United States, the PPP lenders, the state of California, the state of Arizona, the state of Louisiana, and others, and to obtain money and property by false and fraudulent representations, pretenses, and promises in relation to and involving loan proceeds and benefits authorized, transmitted, disbursed, and paid in connection with a presidentially-declared major

disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122)), in violation of Title 18, United States Code, Section 1343, as set forth more specifically below.

**Object of the Conspiracy**

18. The object and purpose of the conspiracy was for the conspirators to unjustly enrich themselves by obtaining COVID-19 disaster relief and UI related proceeds to which they were not entitled, under false and fraudulent pretenses including by submitting false and fraudulent online PPP, EIDL, PUA, and UI applications, and other related documents.

**Manner and Means**

19. In order to accomplish the object and purpose of the conspiracy, **JACKSON** and **MORRIS**, and their co-conspirators used and caused others to use, the following manner and means, among others:

20. Beginning at least in or around April 2020, and continuing through at least in or around November 2021, **JACKSON** and **MORRIS**, and their co-conspirators submitted, and caused to be submitted, false and fraudulent PPP, EIDL, PUA, and UI applications.

21. In many of these PPP and EIDL applications, **JACKSON** and **MORRIS**, and their co-conspirators each provided to the PPP lenders and the SBA false representations pertaining to their businesses including the amount of gross revenues, the average monthly payroll, and the number of employees, and provided false tax records and bank statements in support of the applications. **JACKSON** and **MORRIS** knew these representations were false when these PPP and EIDL applications were submitted.

22. In many of these PUA and UI applications, **JACKSON** and **MORRIS**, and their co-conspirators each falsely represented to the SWAs that the applicant (a) worked in that state

during at least some part of 2019 or 2020, (b) did not work in other states during the specified time period, and (c) had not applied for PUA or UI benefits in any other state during the specified time period. **JACKSON** and **MORRIS** knew these representations were false when they submitted the PUA and UI applications.

23. Specifically, **JACKSON** and **MORRIS**, and their co-conspirators filed, or caused to be filed, the following PPP, EIDL, and PUA/UI applications, which contained the false representations described below, among others:

| **Date** | **Application** | **Applicant Name** | **Example of False Statements** |
|---|---|---|---|
| April 5, 2020 | EIDL | MNR Total Services, LLC | That **JACKSON**'s business, MNR Total Services, LLC, had 2019 gross revenues of $75,000. |
| May 15, 2020 | EIDL | MNR Total Services, LLC | That **JACKSON**'s business, MNR Total Services, LLC, had 2019 gross revenues of $179,800. |
| June 29, 2020 | PPP | Total SVC, Inc. | That **JACKSON**'s business, Total SVC, Inc., had average monthly payroll of $6,954 and six employees. |
| July 8, 2020 | PPP | MNR Total Services, LLC | That **JACKSON**'s business, MNR Total Services, Inc., had average monthly payroll of $25,392, 2019 gross sales/receipts of $375,500, and ten employees. |
| July 18, 2020 | Arizona UI | Ryachanelle L. Morris | That **MORRIS** was employed in Arizona from 2017 until March 12, 2020, and had not worked in any other state from July 2018 until July 2020. |
| July 25, 2020 | PPP | Ryachanelle Morris, LLC | That **MORRIS**' business, Ryachanelle Morris, LLC, had average monthly payroll of $27,551, ten employees, and paid out $272,200 in wages, tips, and other compensation in 2019. |

| | | | |
|---|---|---|---|
| July 29, 2020 | PPP | Michelle Jackson, LLC | That **JACKSON**'s business, Michelle Jackson, LLC, had average monthly payroll of $26,226, fifteen employees, and paid out $272,200 in wages, tips, and other compensation in 2019. |
| August 11, 2020 | California UI | Michelle Jackson | That **JACKSON** resided and worked in California from April 1, 2019, until February 28, 2020, for an employer in Calabasas, California. |
| August 27, 2020 | Louisiana UI | Ryachanelle Morris | That **MORRIS** had not applied for UI benefits in any other state other than Louisiana within the last 12 months and that she had not worked in two or more states between 4/1/2019 and 3/31/2020. |
| October 22, 2020 | Louisiana UI | Michelle Jackson | That **JACKSON** had not applied for UI benefits in any other state other than Louisiana within the last 12 months and that she had not worked in two or more states between 7/1/2019 and 6/30/2020. |
| December 31, 2020 | EIDL | Ryachanelle Morris | That **MORRIS**' business, Ryachanelle Morris, had nine employees and 2019 gross revenues of $89,393. |
| March 28, 2021 | PPP | Ryachanelle Morris | That **MORRIS**' business, Ryachanelle L. Morris, had three employees and average gross income of $190,800 in 2019. |
| April 17, 2021 | PPP | Ryachanelle Morris | That **MORRIS**'s business, dba Da Hood Rich Collection, had gross income of $348,000 in 2019 and a bank account at Financial Lender 2 that had been open since February 2020. |

24. In reliance on the above listed false and fraudulent representations made in support of pandemic relief applications as well as other fraudulent information, **JACKSON** and **MORRIS** gained control of, and attempted to gain control of, more than $350,000.00 in pandemic benefit funds.

25. **JACKSON** and **MORRIS** spent the funds they received on personal expenses including shopping and dining out.

**COUNTS 2 THROUGH 4**
**Wire Fraud**
**(18 U.S.C. § 1343)**

26. The allegations contained in Paragraphs 1–25 are incorporated by reference herein as factual allegations.

27. On or about the dates set forth below, in the Middle District of Louisiana and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, **MICHELLE W. JACKSON**, a.k.a. "**Michelle Walters Jackson**," the defendant herein, did transmit and cause to be transmitted in interstate commerce the following wire communications, among others:

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| 2 | July 2, 2020 | An electronic deposit in the amount of $17,385.00 from Financial Lender 1's computer servers located outside the State of Louisiana to a Bank 1 account belonging to **JACKSON** in the Middle District of Louisiana. |
| 3 | July 10, 2020 | An electronic deposit in the amount of $63,479.00 from Financial Lender 1's computer servers located outside the State of Louisiana to a Bank 1 account belonging to **JACKSON** in the Middle District of Louisiana. |
| 4 | July 31, 2020 | An electronic deposit in the amount of $65,564.00 from Financial Lender 1's computer servers located outside the State of Louisiana to **JACKSON**'s Bank 2 account in the Middle District of Louisiana. |

Each of the above is a violation of Title 18, United States Code, Section 1343.

# NOTICE OF FORFEITURE

28. The allegations contained in Paragraphs 1-27 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

29. Upon conviction of **MICHELLE W. JACKSON**, a.k.a. "**Michelle Walters Jackson**," and **RYACHANELLE L. MORRIS**, the defendants herein, on Count One of the Indictment or upon conviction of **JACKSON**, the defendant herein, on Counts Two through Four of this Indictment, **JACKSON** and **MORRIS** shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real or personal that constitutes or is derived from proceeds traceable to the offenses, including but not limited to a sum of money equal to the amount of the proceeds of the offenses.

30. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek a forfeiture money judgment and, pursuant 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c), to seek the forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

UNITED STATES OF AMERICA, BY

KURT WALL
UNITED STATES ATTORNEY
MIDDLE DISTRICT OF LOUISIANA

J. BRADY CASEY
ASSISTANT UNITED STATES ATTORNEY

**A TRUE BILL**

**REDACTED**
**PER PRIVACY ACT**

GRAND JURY FOREPERSON

August 12, 2026
DATE

**Criminal Cover Sheet** **U.S. District Court**

**Place of Offense:**

City: Baton Rouge

County/Parish: East Baton Rouge

*Investigating Agency: OIG

*Agent: Thomas Redman

**Matter to be sealed:** ☑ Yes ☐ No

Related Case Information:

Superseding ☐ Docket Number ____

Same Defendant ☐ New Defendant ☐

Magistrate Case Number: ____

Search Warrant Case No.: ____

R 20/ R 40 from District of: ____

**Any Other Related Cases:** ____

**Defendant Information:**

Defendant Name: MICHELLE W. JACKSON

Alias: Michelle Walters Jackson

Address: ____

DOB: ____ SS / Alien#: ____ Sex: ____ Race: ____ Nationality: ____

**U.S. Attorney Information:**

AUSA: J. Brad Casey Bar #: LBN 24338

**Interpreter:** ☐ Yes ☑ No **List language and/or dialect:** ____

**Location Status:**

Arrest Date: ____

☐ Already in Federal Custody as of ____

☐ Already in State Custody

☐ On Pretrial Release

**U.S.C. Citations:**

Total # of Counts: 4

**Mandatory Minimum Charged?** ☐ Yes ☑ No

| **Code** | **Description of Offense Charged** | **Count(s)** | **Petty/ Misdemeanor/ Felony** |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit wire fraud | 1 | F |
| 18 U.S.C. § 1343 | Wire fraud | 2-4 | F |
| | | | |
| | | | |

(May be continued on second sheet)

**Date:** 8/12/2026 **Signature of AUSA:** [signature]

**Criminal Cover Sheet** **U.S. District Court**

**Place of Offense:**

City: Baton Rouge

County/Parish: East Baton Rouge

*Investigating Agency: OIG

*Agent: Thomas Redman

**Matter to be sealed:** ☑ Yes ☐ No

Related Case Information:

Superseding ☐ Docket Number ____

Same Defendant ☐ New Defendant ☐

Magistrate Case Number: ____

Search Warrant Case No.: ____

R 20/ R 40 from District of: ____

**Any Other Related Cases:** ____

**Defendant Information:**

Defendant Name: RYACHANELLE L. MORRIS

Alias: ____

Address: ____

DOB: ____ SS / Alien#: ____ Sex: ____ Race: ____ Nationality: ____

**U.S. Attorney Information:**

AUSA: J. Brad Casey Bar #: LBN 24338

**Interpreter:** ☐ Yes ☑ No **List language and/or dialect:** ____

**Location Status:**

Arrest Date: ____

☐ Already in Federal Custody as of ____

☐ Already in State Custody

☐ On Pretrial Release

**U.S.C. Citations:**

Total # of Counts: 1

**Mandatory Minimum Charged?** ☐ Yes ☑ No

| Code | Description of Offense Charged | Count(s) | Petty/ Misdemeanor/ Felony |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit wire fraud | 1 | F |
| | | | |
| | | | |
| | | | |

(May be continued on second sheet)

**Date:** 8/12/2026 **Signature of AUSA:** [signature]